UNITED STATES of America,
Plaintiff,

v.

Claude Edward VEALEY et al.,
Defendants.

Crim. A. No. CT 70-38.

United States District Court
N. D. Ohio,
Eastern Division.

Jan. 29, 1970.

Robert B. Krupansky, U. S. Atty., Cleveland, Ohio, for plaintiff.

Harry A. Hanna, Cleveland, Ohio, for defendant Claude E. Vealey.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Counsel for Claude E. Vealey moves this court for an order preventing the Government from making public disclosures of any evidence and/or information relating to the defendant Vealey and the charges lodged against Claude E. Vealey. Claude E. Vealey, Paul E. Gilly, and Aubran W. Martin have been arrested on federal charges that relate to Joseph Yablonski. Yablonski, his wife and daughter are reported to have been killed by gunshots in their Clarksville, Pennsylvania home where their bodies were discovered on January 5, 1970.

Vealey, Gilly, and Martin have appeared before United States Commissioner Clifford Bruce who, among other things, advised them of the charges against them and set bonds. Tomorrow afternoon at 2:00 o'clock the United States Commissioner will conduct preliminary hearings as to each of the three accused men.

It appears that the federal grand jury, recalled by the United States Attorney, has been in session since Tuesday, January 27, 1970; and that the federal grand jury is investigating the Yablonski matter.

To support his motion counsel for Claude E. Vealey asks the court to consider the widespread pretrial publicity which the news media are giving the Yablonski matter, and the alleged involvement of his client in the Yablonski killing.

Exemplifying his contentions he offered into evidence at yesterday's hearing, January 28th editions of the Cleveland *Plain Dealer* and the *Cleveland Press* and their front page stories concerning these matters.

The court takes judicial notice of the sustained and featured news coverage that these matters have received and are continuing to command in the Cleveland newspapers, in other newspapers throughout the country, and in news reports on local and national radio and television news programs.

Counsel disclaims that he requests any sanction that would muzzle freedom of press. However, counsel does contend that Government agents, but not the United States Attorney, nor his assistant attorneys, are leaking information that has become the news stories that Vealey's counsel finds objectionable and prejudicial to the rights of his client Vealey.

Counsel, therefore, seeks a court order, applicable to any agent of government, that would bar their public disclosures "of any evidence and/or information relating to the defendant and the charges lodged against him in the above captioned matter."

The United States Attorney, while opposing the granting of the motion, insists that neither he nor his staff has disclosed any information that has produced the pretrial publicity that Vealey's counsel vigorously challenges. This court has no knowledge to the contrary. He accepts, as true, the statements of the United States Attorney.

Moreover, the United States Attorney emphasizes his deep desire that the handling of the news in no way prejudice the rights of Claude Vealey, the other two accused men, or any other person in any prosecution or trial that may hereafter ensue in these matters.

Experience teaches that trying to trace the source of a news leak that concerns the courts is tougher than the task of trying to locate a leak in your house roof. Hence, one cannot conclude from whence has come the information or the accuracy of the information in any alleged confession reported by any of the news media. Nor is it known what are the sources of any news stories that purport to report the motive or other details of the Yablonski killings.

■ Nevertheless, the filing of this motion and the court's own awareness of the pervasive pretrial publicity that has occurred and continues in connection with this case requires this trial court to undertake its responsibility. This responsibility was placed squarely on the shoulders of the trial judge by the United States Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Whenever, as here, excessive pretrial publicity in connection with a criminal matter may possibly threaten the fundamental fairness of any prosecution that may ensue, the trial court should take appropriate action.

This court is mindful of the essential function in a free society that the press performs in protecting the innocent, in rooting out wrong, and in helping keep justice—corruption free, evenhanded, and as speedy and sure as is humanly possible within the framework of our constitution and laws.

■ In keeping with this tradition this court asks each of the news media to remind itself, its readers, viewers, or listeners of the inalienable right of every American accused of crime. Every accused person is presumed innocent. This presumption of innocence surrounds and protects every accused person until and unless that presumption has been removed by trial proof of guilt that is established beyond a reasonable doubt.

This court asks the *Plain Dealer* and the *Cleveland Press* to adhere to the guideline limits of pretrial publicity in a criminal case that each newspaper has voluntarily accepted and put into effect. One of the restraints accepted by the *Plain Dealer* is that it shall not report any alleged confession or statement of any person charged with a crime until

such confession or statement has been admitted in evidence in the court record of any particular case, then current, except where the person arrested, after consultation with his counsel admits that he voluntarily made the confession or statement reported.

This court witnessed last evening on a local television program an interrogation of the wife of one of the accused men with reference to her husband. Even though the woman was obviously distraught the questioning was pressed until the woman collapsed. This type of reporting may satisfy the public's curiosity and thirst for the morbid and macabre. But it seems to me it exceeds the decent bounds of the public's right to know about the prosecution of a criminal case.

This court has determined that it will issue an order to deal with the present and immediate future of these proceedings. This order, however, will apply only to persons located within the Northern District of Ohio, the geographical limits of this court.

Nevertheless, the Department of Justice and its included agency, the Federal Bureau of Investigation, are reminded that the Department of Justice has self-regulated the release of information by personnel of the Department of Justice relating to criminal proceedings.

Published in Title 28, Part 50.2 of the Code of Federal Regulations, among other things these regulations state the following:

Disclosures should include only the incontrovertible, factual matters, and should not include subjective observations. In addition, where background information or information relating to the circumstances of an arrest would be highly prejudicial and where the release thereof would serve no law enforcement function, such information should not be made public.

Moreover, personnel of the Department of Justice are directed to refrain from making available the following:

\* \* \* \* \* \*

(ii) Statements, admissions, confessions, or alibis attributable to a defendant.

(iii) References to investigative procedures, such as fingerprints, polygraph examinations, ballistic tests, or laboratory tests.

\* \* \* \* \* \*

(v) Statements concerning evidence \* \* \* whether or not it is anticipated that such evidence \* \* \* will be used at trial.

█ Upon the grounds and for the reasons stated, and adopting applicable language of the specific recommendations of the Judicial Conference of the United States, the following order is issued:

I. The United States Attorney, each attorney on his staff, the employees and agents of his office; each defense counsel representing Claude E. Vealey, Paul E. Gilly, and Aubran W. Martin, and every attorney, employee, and agent associated in the defense of said accused persons; the special agent in charge of the Cleveland office of the Federal Bureau of Investigation, and each special agent and employee on his staff, are ordered to act in these matters in accordance with the following restraints and permissions:

(a) With respect to the preliminary hearings before the United States Commissioner, previously described, with respect to the grand jury's investigation of the Yablonski matter each said person shall refrain from making any extra-judicial (out of court) statement, for dissemination by any means of public communication, that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers, or otherwise to aid in the investigation.

(b) From the time of any arrest, issuance of any arrest warrant, or the filing of any complaint, information, or in-

dictment in any criminal matter that may ensue until the commencement of trial, each of said persons shall not release or authorize the release of any extra-judicial (out of court) statement for dissemination by any means of public communication relating to that matter and concerning:

(1) The prior criminal record (including arrest, indictments, or other charges of crime) or the character, or reputation of the accused, except that said person may make a factual statement of the accused's name, age, residence, occupation, and family status, and if the accused has not been apprehended, a person associated with the prosecution may release any information necessary to aid in his apprehension or warn the public of any dangers that he may present;

(2) The existence of contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make any statement;

(3) The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;

(4) The identity, testimony, or credibility of prospective witnesses;

(5) The possibility of a plea of guilty to the offense charged or a lesser offense;

(6) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

The foregoing shall not be construed to preclude said person during this period in the proper discharge of his official or professional obligations from announcing the fact and circumstances of arrest (time and place of arrest, resistance, pursuit, and use of weapons), the identity of the investigating and arresting officer or agency, and the length of the investigation; from making an announcement, at the time of seizure of physical evidence other than a confession, admission or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the court in the case; from announcing the scheduling or result of any stage in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges made against him.

II. The United States Marshal, deputy marshals and member of his staff; the Clerk of Court for the Northern District of Ohio, deputy clerks and other members of his staff; the bailiffs, law clerks, and court secretaries of this court shall exercise the following restraints:

Unless authorized by a judge of this court, each such person is prohibited from disclosing to any person information relating to the pending criminal matter CT 70–38, and the pending grand jury investigation and any resulting indictment or information that may issue from such grand jury investigation. Since the grand jury is operating under an oath of secrecy already administered to it, this order need not and does not extend to the grand jurors.

It is so ordered.